R. Daniel Fleck
Kent W. Spence
LAWYERS AND ADVOCATES FOR WYOMING
15 South Jackson Street
Post Office Box 548
Jackson, Wyoming 83001
(307) 733-7290

And

Mark J. Murphy
142 S. Main St.
Drawer G
Sheridan, WY 82801

Attorneys for Plaintiffs

FILED
DISTRICT OF WYOMING
CHEYENNE

96 MAY 10   AM 11 40

CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| RAMON CASTANEDA, and ELVIA CASTANEDA, individually and on behalf of their son RAMON CASTANEDA, JR., MARIO CASTILLO, and ANITA CASTILLO, individually and on behalf of their son OSCAR CASTILLO, JUAN GARZA, MARIA ISABEL GARZA, MARCELINO GONZALEZ, NORMA GONZALEZ, JOSE LUIS MARTINEZ, ADELAIDA MARTINEZ, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, vs. | ) ) ) ) ) |
| THE UNITED STATES OF AMERICA; UNKNOWN AGENTS OF THE UNITED STATES BORDER PATROL AND IMMIGRATION AND NATURALIZATION SERVICE, described herein as Doe Defendants 1-20, in their individual capacities; BIG HORN COUNTY, WYOMING; GARY ANDERS, former Bighorn County Sheriff, in his individual and official capacity; UNKNOWN DEPUTIES OF THE BIG HORN COUNTY SHERIFFS DEPARTMENT, described herein as Doe Defendants 21-40, in their individual capacities. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**96 CV   099** J

Civil No. _____

## COMPLAINT

COME NOW the Plaintiffs, Ramon Castaneda, Elvia Castaneda, Ramon Castaneda, Jr., Mario Castillo, Anita Castillo, Oscar Castillo, Juan Garza, Maria Isabel Garza, Marcelino Gonzalez, Norma Gonzalez, Jose Luis Martinez, and Adelaida Martinez, by and through counsel, and bring this action as follows:

# I.

# **PRELIMINARY STATEMENT**

1.  This is an action for money damages arising under 42 U.S.C. §§1983, 1985(3), 1986, the Constitution and laws of the United States of America, and the Constitution and laws of the State of Wyoming.

2.  Plaintiffs bring this action for injuries sustained during a raid on their residences by agents of Big Horn County, Wyoming, and agents of the United States Immigration and Naturalization Service ("INS"), including the U.S. Border Patrol. In 1993 Plaintiffs were living and working in Basin, Wyoming as migrant farm workers. Shortly before Midnight on June 2, 1993, agents of the INS stormed three apartments and performed warrantless searches and seizures on the Plaintiffs. The INS agents were working in concert with deputies of the Big Horn County Sheriff's Department.

3.  Defendants concentrated their raids on residences where persons of Hispanic ancestry were known to reside. Defendants entered the homes without having obtained search or arrest warrants; without voluntary consent by the occupants; without an articulable suspicion that any particular resident was undocumented; and without the presence of exigent circumstances that might otherwise justify warrantless searches or arrests.

2

4. By reason of Defendants' conduct and acts against Plaintiffs', Plaintiffs have been deprived of rights, privileges and immunities secured to them by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article 1 §§ 1, 2,4, and 6 of the Wyoming Constitution and the laws enacted thereunder, in that the searches and seizures amounted to arbitrary intrusions by the defendants into the security of Plaintiffs' privacy, persons and dwellings and were not authorized by law.

5. Plaintiffs seek money damages for the violations of Plaintiffs' constitutional and statutory rights and further relief to be determined at the time of trial.

## II.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant 28 U.S.C. §1331 as it is an action that arises under the Constitution and laws of the United States. This Court also has jurisdiction over Big Horn County, Wyoming and the local law enforcement officers pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

7. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over any claims arising under Wyoming law, and Plaintiffs have exhausted their administrative remedies with regard to those claims. Pursuant to Wyo. Stat. §§ 1-39-101, et. seq., proper claims against Big Horn County, Wyoming were presented on May 15, 1995, on behalf of each of the Plaintiffs. The Big Horn County Commissioners denied the claims in a notice dated June 12, 1995.

8.  Pursuant to 28 U.S.C.§§1331 and 1343, this Court has jurisdiction over Plaintiffs' claims arising under the Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b).  Each of the Plaintiffs filed their administrative claims under the FTCA on May 15, 1995.  These claims were denied by notice dated December 12, 1995.

9.  Pursuant to 28 U.S.C. § 1391 (b) (2), the proper venue for this cause of action is the United States District Court for the District of Wyoming because the acts and omissions complained of occurred within the District of Wyoming.

## III.

## PARTIES

10.    Plaintiff Ramon Castaneda is a Mexican citizen of Hispanic descent.  Mr. Castaneda is a legal resident alien of the United States of America, a seasonal resident of Wyoming, and a resident of Royal City, Washington.

11.    Plaintiff Elvia Castaneda is a United States citizen of Hispanic descent.  She is a seasonal resident of Wyoming and a resident of Royal City, Washington.

12.    Plaintiff Ramon Castaneda, Jr. is a United States citizen of Hispanic descent.  He is a seasonal resident of Wyoming and a resident of Royal City, Washington.

13.    Plaintiff Mario Castillo is a Mexican citizen of Hispanic descent.  Mr. Castillo is a legal resident alien of the United States of America, a seasonal resident of Wyoming, and a resident of Edcouch, Texas.

14.    Plaintiff Anita Castillo is a United States citizen of Hispanic descent.  She is a seasonal resident of Wyoming and a resident of Edcouch, Texas.

15.    Plaintiff Oscar Castillo is a United States citizen of Hispanic descent.  He is a seasonal resident of Wyoming and a resident of Edcouch, Texas.

16.    Plaintiff Juan Garza is a United States citizen of Hispanic descent.  He is a seasonal resident of Wyoming and a resident of Edinburg, Texas.

17.    Plaintiff Maria Isabel Garza is a United States citizen of Hispanic descent.  She is a seasonal resident of Wyoming and a resident of Edinburg, Texas.

18.    Plaintiff Marcelino Gonzalez is a United States citizen of Hispanic descent.  He is a seasonal resident of Wyoming and a resident of Hidalgo, Texas.

19.    Plaintiff Norma Gonzalez is a United States citizen of Hispanic descent.  She is a seasonal resident of Wyoming and a resident of Hidalgo, Texas.

20.    Plaintiff Jose Luis Martinez is a Mexican citizen of Hispanic descent. Mr. Martinez is a legal resident alien of the United States of America, a seasonal resident of Wyoming, and a resident of Hidalgo, Texas.

21.    Plaintiff Adelaida Martinez is a Mexican citizen of Hispanic descent. Mrs. Martinez is a legal resident alien of the United States of America, a seasonal resident of Wyoming, and a resident of Hidalgo, Texas.

22.    Defendant United States of America is a sovereign nation and responsible for all actions of the Immigration and Naturalization Service and the United States Border Patrol.

23.    Defendant Big Horn County is a political subdivision organized and existing under the laws of the State of Wyoming with the capacity to sue and be sued. Big Horn County includes the Big Horn County Sheriff's Department.

24.    Defendant Gary Anders is sued individually and in his official capacity as the former Sheriff of Big Horn County, Wyoming. As Sheriff, Defendant Anders is responsible for developing departmental policy and for exercising supervisorial authority over the activities of officers and employees of the Big Horn County Sheriff's Department. At all times relevant herein, Defendant Anders was acting under color of state law.

25.    Defendants Doe, 1 through 20, are unknown agents of the United States Border Patrol and/or the Immigration and Naturalization Service. Doe Defendants 1 through 20 are sued in their individual capacity. Plaintiffs do not presently know the true identities of these Doe Defendants, but will seek leave of this Court to amend the Complaint once their identities

6

are ascertained. These Defendants acted within the course and scope of their employment and under color of their authority, under color of the statutes, regulations, customs and usages of the United States of America and the INS, and pursuant to the official policy of these Defendants. Any and all actions undertaken by these Defendants constituted actions under color of Federal law.

26. Defendants Doe, 21 through 40, are unknown agents of the Big Horn County Sheriff's Department. Doe Defendants 21 through 40 are sued in their individual capacity. Plaintiffs do not presently know the true identities of these Doe Defendants, but will seek leave of this Court to amend the Complaint once their identities are ascertained. These Defendants acted within the course and scope of their employment and under color of their authority, under color of the statutes, regulations, customs and usages of Big Horn County and the Big Horn County Sheriff's Department, and pursuant to the official policy of these Defendants. Any and all actions undertaken by these Defendants constituted actions under color of State law.

## IV.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

27. Shortly before Midnight on June 2, 1993, Defendants descended upon at least three private apartments located at 152 N. 6th St., Apartments #1, #3, and #4 in the City of Basin, Big Horn County, Wyoming.

28. The Defendants did not secure search or arrest warrants for any of these residential raids. Rather, Defendants forcibly entered the private

residences without first obtaining permission of the occupants. At the time of entry, Defendants did not have particularized suspicion that any individual within any of the residences was in the United States unlawfully.

29.    Plaintiffs were detained without any reasonable suspicion that they had violated laws which came within the Defendants' jurisdiction or within defendants' powers of arrest. Defendants interrogated the Plaintiffs about their citizenship or immigration status and required that they show documentation of their legal right to be in the United States. At all times, the defendants conducted themselves in a manner calculated to demonstrate great force and authority and to intimidate those present to submit to defendants' unlawful demands.

30.    Plaintiffs in no way voluntarily consented to the defendants' entries or subsequent conduct. Further, Plaintiffs were put in great fear by Defendants' presence and tactics and did not feel that they were free to leave.

31.    Big Horn County Sheriff's officers and United States Border Patrol agents detained, interrogated, and impermissably searched Plaintiffs and their homes as part of a conspiracy which was planned, developed, approved, ratified, promulgated, executed and implemented by Defendants Big Horn County and agents of the United States Border Patrol.

32.    Upon arrival at the Plaintiffs' homes, the Defendants did not seek consensual entry. They did not identify themselves specifically or their authority, nor did the officers ever show any type of identification or warrant. They proceeded into each home and conducted the unlawful searches in the following manner:

a)  On June 2, 1993 the Gonzalez, Castenada and Martinez families were residing in Apartment #1.  Mr. and Mrs. Gonzalez are  American citizens.  Elvia Castenada and Ramon Castenada Jr. are American citizens.  Ramon Castenada is a legal resident alien.  Mr. and Mrs. Martinez are legal resident aliens. The families had retired that night at 9:00 p.m. after a strenuous day as migrant farm workers. At approximately 11:00 p.m. the entire household was awaken by a loud banging on the door.  Marcelino Gonzalez was asked by Mrs. Martinez to go to the door.  She did not answer the door because she does not speak English.  Mr. Gonzalez got out of bed and approached the door.  At least three men claiming to be police officers demanded he open the door.  As Mr. Gonzalez unlocked the door and he was immediately shoved in as three officers forcefully entered the apartment. Two of the officers had clothing identifying them as INS.  The other officer was a uniformed deputy of the Big Horn County Sheriff's office.  Upon entering the apartment an officer with a INS baseball cap pushed Mr. Gonzalez, causing him to fall onto the couch.  The officers ordered all adult residents of Apartment 1 to sit on the floor of the living room.  Two of the officers proceeded to search all rooms and closets of the apartment, including rooms with sleeping children.  The officers conducted these searches with flashlights, shining the light in the Plaintiffs' eyes.  While in Apartment 1 the officers continually had a hand on their weapons, placing the Plaintiffs' in great fear of bodily injury.  After conducting a thorough search of the entire premises, the officers demanded Mr. & Mrs. Martinez show the officers their papers.  The Martinez' complied with the order.  Mr. Gonzalez asked the officers if he needed to get his papers too, and one of the officers replied it would not be necessary.  As the officers were leaving, Elvia Castaneda said she was going to call the city police.  An officer

responded, "Go ahead and call them, we have their permission." After conducting the illegal search of Apartment 1 the officers continued on to search other apartments.

b.) On June 2, 1993 the Castillo family resided in Apartment 4. Plaintiff Anita Castillo and her son Oscar are United States citizens. Plaintiff Mario Castillo is a legal resident alien. At around 11:00 p.m. Mr. Castillo was awakened by loud kicking on his front door. Mr. Castillo went to the door and as he opened it three officers pushed on the door and forcibly entered the apartment. The officers proceeded to search the entire apartment. The officers found thirteen year-old Oscar Castillo sleeping on the couch. The officers awoke Oscar, shined flashlights in his eyes, and caused him and the entire family to be in great fear for their safety. After conducting their search, the officers left Apartment 4 and continued on to another apartment.

c.) On June 2, 1993 the Garza family resided in Apartment 3. Plaintiffs Juan and Maria Garza are United States citizens. At approximately 11:00 p.m. Mr. Garza heard someone kicking and hitting his front door. Mr. Garza asked the people outside to identify themselves and did not receive an intelligible answer. Mr. Garza opened the door slightly to see who was there, and immediately thereafter a flashlight was jammed in the door and the door forced open. At least three men entered Apartment 3, shining flashlights in Mr. Garza's eyes and demanding to see his papers. Mr. Garza requested that he be allowed to go to the bedroom to get his papers. Upon entering the bedroom Mr. Garza asked his wife for her purse. When he turned back around the officers were in his bedroom, shining their flashlights

upon Mrs. Garza, who was still in bed.  Upon production of the Garzas' birth certificates, the men exited the Apartment, walking down the stairs laughing.

33.  The Defendants systematically went through each home shining their flashlights into the faces of young, terrified children while holding their hands on their weapons.

34.  Upon unlawfully entering the homes the Defendants disregarded the Plaintiffs' statements that they were American citizens.  They searched all residences completely, demanding immigration papers and then laughed and joked as they left, in utter disregard for the Plaintiffs' right to be free from such intrusions.

35.  Upon information and belief, Plaintiffs assert the INS and the Sheriffs' office selected the homes raided on June 3, 1993 based on the Hispanic appearance of the residents there.

36.  Neither the Sheriffs office nor the INS officers who participated in the June 3, 1993 raids on the plaintiffs' homes had search  warrants. There were no exigent circumstances and no one was taken from the premises.  No consent was given to the intruders to enter the residences.

37.  As a proximate result of Defendants' conduct and acts against the Plaintiffs, Plaintiffs have been actually harmed in that all Plaintiffs suffered damages and pain including, but not limited to, humiliation, embarrassment, indignity, fear, mental anguish, emotional distress, and loss of their sense of security and pride.

38.  Each of the Defendants practices, conduct and acts alleged herein was carried out under color of law and was instituted and maintained by the

Defendants and applied to the Plaintiffs recklessly with knowledge that defendants were violating plaintiffs' rights. All of the acts alleged herein were undertaken oppressively, maliciously, and with reckless and wanton disregard of Plaintiffs' rights. In undertaking the acts alleged herein Defendants have been deliberately indifferent to Plaintiffs rights.

## V. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Deprivation of Constitutional Rights )

40. Plaintiffs reallege the allegations of paragraphs 1 through 39 above and incorporate them by reference as though fully set forth herein.

41. At no time prior to or during the June 3, 1993 raids did any of the Defendants obtain or have within their possession a warrant of any court to enter or inspect any of the premises, or for the search of any of the individuals inside the homes. At no time did any Plaintiff, or any other competent person, give his or her voluntary consent for the Defendants to enter any of the affected residences, to search any of the affected residence or to interrogate or detain any person.

42. At the time of each of the searches and seizures alleged to have occurred, the defendants did not have individualized and reasonable cause or suspicion, based on articulable facts and or reasonable inferences to believe that any Plaintiff was engaged in illegal activity or was illegally present in the United States. The searches took place and the detentions and arrests were accomplished without probable cause.

43. The defendants violated the Fourth Amendment to the United States Constitution by acting, in concert with other law enforcement personnel to enter homes, detain and interrogate Plaintiffs without warrants and without reasonable cause to believe, based upon specific articulable facts, that Plaintiffs were persons unlawfully present in the United States.

44. As a consequence of the Defendants' acts and omissions as described herein, the Plaintiffs have been deprived of their right to be free from unreasonable searches and seizures in violation of the Fourth Amendment to the United States constitution.

45. As a result of the above mentioned conduct, Defendants also deprived Plaintiffs of life, liberty and property without due process of law in violation of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

46. In acting in the manner described above, Defendants intended to discriminate and, in fact, did discriminate against Plaintiffs of Hispanic ancestry and appearance on account of their actual or presumed race and ethnicity.

47. Accordingly, Plaintiffs pray for relief against Defendants, and each of the, as set forth below.

## SECOND CLAIM FOR RELIEF

(Deprivation of Constitutional Rights and Federal Law - Against Big Horn County Wyoming; Gary Anders, Former Big Horn County Sheriff, and Unknown John Doe Deputies 21-40)

48. Plaintiffs reallege the allegations of paragraphs 1 through 39 and paragraphs 40 through 47 above and incorporate them be reference as though fully set forth herein.

49.  Defendants are charged with the responsibility of properly supervising, training, disciplining and controlling persons under their command so that the laws, regulations and policies relating to entry, search, detention and arrest are not violated.  Defendants have willfully and recklessly failed to do so.

50.  Defendants' failure to adequately supervise, train, discipline and control persons under their command evidences a reckless disregard for the rights of the public, including those of plaintiffs, and exhibits a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of supervisory officers.

51.  The failure of Defendants to adequately supervise train, discipline and control persons under their command in the exercise of their duties, and their failure to insure compliance with the law, regulations and policies relating to entry, search, detention and arrest was and is in such reckless, wanton and malicious disregard of the consequences as to display a conscious indifference to the danger of harm and injury to persons such as the Plaintiffs.

52.  The aforementioned illegal conduct of the Big Horn County Sheriff's office and the INS agents was planned, developed, approved, ratified, promulgated, executed and/or implemented by Defendants.

53.  The unlawful acts alleged above and the resultant injuries to and damages suffered by each of the plaintiffs were directly and proximately caused by the aforesaid reckless failure of the Defendants to adequately supervise, train, discipline and control agents under their command.

54.  The aforesaid failure of the Defendants to adequately supervise, train, discipline and control agents under their command was done with deliberate indifference to Plaintiffs' constitutional and statutory rights.

55.  The acts of Defendants alleged above and each of them were done under the color of law and deprived the plaintiffs of their due process, constitutional rights to equal protection, and to be free of unreasonable search and seizure in violation of 42 U.S.C.§ 1983.

56.  Accordingly, Plaintiffs pray for relief against Defendants, and each of them, as set forth below.

## THIRD CLAIM FOR RELIEF

(42 U.S.C. § 1985(3) Conspiracy - Against All Defendants)

57.  Plaintiffs reallege the allegations of paragraphs 1 through 39, 40 through 47, and paragraphs 48 through 56 above and incorporate them be reference as though fully set forth herein.

58.  By their actions as alleged herein, officers of the Big Horn County Sheriffs office conspired within their office to deprive the Plaintiffs of the equal protection of laws and of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3). The federal agents conspired within their office to deprive the Plaintiffs of the equal protection of laws and of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3).The federal agents conspired with the Big Horn Sheriff's office to deprive the Plaintiffs of the equal protection of laws and of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3). The searches and seizures conducted by agents of Big Horn County and agents of the United States Border Patrol were acts in furtherance of the conspiracy to deprive Plaintiffs of their constitutionally protected rights. This conspiracy was aimed at depriving these Hispanic

Plaintiffs of the enjoyment of equal rights guaranteed to all persons by the United States Constitution.

59. Accordingly, Plaintiffs pray for relief against Defendants, and each of them, as set forth below.

## FOURTH CLAIM FOR RELIEF

(42 U.S.C. § 1983 Conspiracy -Against All Defendants)

60. Plaintiffs reallege the allegations of paragraphs 1 through 39, 40 through 47, 48 through 56, and paragraphs 57 through 59 above and incorporate them by reference as though fully set forth herein.

61. In the residential raids carried out in Big Horn County, agents of the INS acted in concert with agents of the Big Horn County Sheriff's office acting under color of state law to deprive. This combined action violated 42 U.S.C. § 1983 and makes both the individual Sheriff's office Defendants and the individual federal Defendants liable for damages, attorney fees and other appropriate relief for violation of the Plaintiffs' constitutional rights. By their actions as alleged herein, officers of the Big Horn County Sheriffs office conspired within their office to deprive the Plaintiffs of their federal constitutional rights in violation of 42 U.S.C. § 1983. The federal agents conspired within their office to deprive the Plaintiffs of their federal constitutional rights in violation of 42 U.S.C. § 1983. The federal agents conspired with the Big Horn Sheriff's office to deprive the Plaintiffs of their federal constitutional rights in violation of 42 U.S.C. § 1983. The searches and seizures conducted by agents of Big Horn County and agents of the United States Border Patrol were acts in furtherance of the conspiracy to

deprive Plaintiffs of their constitutionally protected rights. This conspiracy was aimed at depriving these plaintiffs of the enjoyment of rights guaranteed to all persons by the United States Constitution.

62. Accordingly, Plaintiffs pray for relief against Defendants, and each of them, as set forth below.

## FIFTH CLAIM FOR RELIEF

(Claim for Deprivation of State and Federal Constitutional rights - Against Defendants Big Horn County, Former Big Horn County Sheriff Gary Anders, and John Doe Deputies 21-40)

63. Plaintiffs reallege the allegations of paragraphs 1 through 39, 40 through 47, 49 through 56, 57 through 59, and paragraphs 60 through 62 above and incorporate them by reference as though fully set forth herein.

64. Defendants' actions, as described herein, were threatening, intimidating, coercive and interfered with the exercise of Plaintiffs' federal constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

65. Moreover, Defendants' actions deprived Plaintiffs of their right to be free from unreasonable searches and seizures as guaranteed by Art. 1, § 4 of the Constitution of the State of Wyoming.

66. Defendants' actions also deprived Plaintiffs of the equal protection of the laws as guaranteed by Art. 1, § 2 of the Constitution of the State of Wyoming.

67. Defendants' actions further deprived Plaintiffs of the inalienable right of pursuing and obtaining privacy as guaranteed by Art. 1, § 1 of the Constitution of the State of Wyoming.

17

68.  Defendants' actions further deprived Plaintiffs of the right of due process as guaranteed by Art. 1, §6 of the Constitution of the State of Wyoming.

69.  Accordingly, Plaintiffs pray for relief against Defendants, and each of them, as set forth below.

## SIXTH CLAIM FOR RELIEF

(Assault - Against Defendant United States of America, and John Doe Defendants 1 through 20)

70.  Plaintiffs reallege the allegations of paragraphs 1 through 39, 40 through 47, 48 through 56, 57 through 59,60 through 62 , and paragraphs 63 through 69 above and incorporate them by reference as though fully set forth herein.

71.  In doing the acts alleged above, Defendants intended to cause or to place Plaintiffs and each of them in apprehension of a harmful or offensive contact with each Plaintiffs' person.

72.  As a result of Defendants' acts as alleged above Plaintiffs and each of them in fact were placed in great apprehension of a harmful or offensive contact with each Plaintiffs' person.

73.  At no time did Plaintiffs consent to any of the wrongful acts of Defendants alleged above.

74.  The conduct of Defendants alleged above was willful and malicious and was intended to oppress and cause injury to Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

75  As a proximate result of the acts of Defendants as alleged above, Plaintiffs were caused damages, including mental, physical and nervous pain and suffering.

76.  Accordingly, Plaintiffs pray for relief against Defendants, and each of them, as set forth below.

## SEVENTH CLAIM FOR RELIEF

(Trespass - Against Defendant United States of America and John Doe Defendants 1 through 20)

77.  Plaintiffs reallege the allegations of paragraphs 1 through 39,  40 through 47, 48 through 56, 57 through 59,60 through 62 , 63 through 69 and paragraphs 70 through 76 above and incorporate them by reference as though fully set forth herein.

78.  Defendants and each of them wrongfully and unlawfully entered Plaintiffs' residences; demanded to see immigration papers; terrorized family members and others; searched the rooms of the residences; and in many instances, detained occupants of the dwellings.

79  As a proximate result of Defendants' entries, Plaintiffs suffered discomfort and annoyance and experienced mental suffering caused by fear for their safety.

80.  The conduct of Defendants alleged above was willful and malicious  and was intended to oppress and cause injury to Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

81.  As a proximate result of the acts of Defendants as alleged above, Plaintiffs were caused damages, including great mental, physical and nervous pain and suffering all to their damage.

82. Accordingly, Plaintiffs pray for relief against Defendants, and each of them, as set forth below.

## VI.

## DAMAGES AND PRAYER FOR RELIEF

83. Plaintiff incorporates herein by this reference the allegations contained in paragraphs 1 through 82 above.

84. As a direct and proximate cause of the Defendants actions, Plaintiffs have been irreparably injured and have suffered damages. Said damages include, but are not specifically limited to, the pain, suffering, humiliation, personal injury, loss of enjoyment of life, and other resulting damages. Plaintiffs have been held up to public scorn and ridicule during all times since the acts herein were committed, and damages will be suffered by Plaintiffs in the future on a continuing basis as a result of the tortious conduct of the Defendants as more specifically set forth above.

85. As a direct and proximate cause of the conduct and civil rights violations of the Defendants, the Plaintiffs have been irreparably injured and have suffered damages, including but not limited to:

    a)    Physical injuries,

    b)    Humiliation;

    c)    Pain and suffering;

    d)    Loss of enjoyment of life, emotional and psychological distress and sociological distress;

    e)    Attorneys' fees and costs of litigation; and

    f)    Punitive and exemplary damages.

86. In addition to compensatory damages, the Plaintiffs claim punitive damages and statutory attorney fees pursuant to 42 U.S.C. §1988 against the Defendants in an amount to be proven at trial for civil rights violations and willful and wanton acts and omissions against the Plaintiffs. The Defendants committed the acts and omissions alleged herein and subjected Plaintiffs to vicious treatment that has resulted in their injuries. This inhumane treatment should not be permitted in law or in fact; moreover, it should be punished and an example made so it is not repeated. The recovery of punitive damages is permitted under the federal civil rights act for reckless or callous indifference to the federally-protected rights of others (Smith v. Wade, 461 U.S. 30, 75 L.Ed.2d 632, 651 (1983)), and is therefore appropriate in this case.

87. The aforesaid claims are correct, reasonable and just, and no part of the claim has been paid by the Defendants to the Plaintiffs.

88. This Complaint is being submitted in good faith and it is respectfully submitted that the facts and circumstances in this matter will shock the governing body of the governmental agency, as well as the general public of the State of Wyoming and the United States of America into deterring such conduct in the future.

DATED: May 9, 1996


ATTORNEYS FOR PLAINTIFFS:
R. Daniel Fleck
Kent W. Spence, Of
Lawyers and Advocates for Wyoming

And,

Mark J. Murphy, Attorney at Law.


by:_____
R. Daniel Fleck, Director
Lawyers and Advocates for  Wyoming.
15 South Jackson Street
P. O. Box 548
Jackson, Wyoming  83001
(307) 733-7290